UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JUAN SERTUCHE, <br><br> Defendant. | 5:24-CR-50020-KES <br><br> ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND DENYING DEFENDANT'S MOTION FOR NEW TRIAL |

Defendant, Juan Sertuche, filed a Rule 29 motion for judgment of acquittal and a Rule 33 motion for new trial after a jury found him guilty of Conspiracy to Distribute Methamphetamine, Conspiracy to Distribute Fentanyl, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Docket 312; Docket 314; Docket 301. The United States opposes these motions. Docket 329; Docket 330. The court issues the following order.

## BACKGROUND

Sertuche was indicted on February 29, 2024, and charged with two counts: Conspiracy to Distribute Methamphetamine and Conspiracy to Distribute Fentanyl. Docket 1. On June 6, 2025, the United States filed a Superseding Indictment that added an additional count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Docket 232 at 2. After a three-day trial, the jury found Sertuche guilty on all three counts. Docket 301.

Sertuche now moves for a judgment of acquittal and for a new trial. Docket 312; Docket 314. In support of his motion for judgment of acquittal, Sertuche advances two related arguments. *See* Docket 315. First, he contends

the evidence is insufficient to establish the fourth element of Counts 1 and 2. *Id.* at 1-3. Second, he argues that this failure necessarily defeats the first element of Count 3. *Id.* at 3. Furthermore, Sertuche asserts that a new trial is warranted under Rule 33 "because the Government used a toxic amalgamation of unreliable lay testimony combined with assumptions based on law enforcement witnesses to obtain a judgment of conviction against [him]." Docket 313 at 1. The United States opposes both motions. Docket 329; Docket 330.

## DISCUSSION

### I.    Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure Rule 29 provides that "on the defendant's motion," a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). District courts have "very limited latitude" to enter a judgment of acquittal under Rule 29. *United States v. Hassan*, 844 F.3d 723, 725 (8th Cir. 2016). The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004).

But the court is not at liberty to assess witness credibility or weigh evidence. *Id.* Instead, the court reviews the record in the light most favorable to the government and resolves all evidentiary conflicts accordingly. *United States v. Boesen*, 491 F.3d 852, 856 (8th Cir. 2007). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-

minded jury to find the defendant guilty beyond a reasonable doubt.' " *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)).

To obtain a conviction for Counts 1 and 2—Conspiracy to Distribute methamphetamine and fentanyl, respectively—the United States was required to prove four essential elements:

> One, beginning at a time unknown but no later than on or about January 2022, and continuing through on or about October 2023, in the District of South Dakota and elsewhere, two or more persons reached an agreement or came to an understanding to distribute a mixture or substance containing methamphetamine[/fentanyl], a Schedule II controlled substance;
>
> Two, that Sertuche voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;
>
> Three, that at the time Sertuche joined in the agreement or understanding, he knew the purpose of the agreement or understanding;
>
> And four, that the agreement or understanding involved 500 grams or more of a mixture of substance containing methamphetamine[/400 grams or more of a mixture of substances containing fentanyl].

Docket 298 at 3-6 (Final Instruction No. 2); *see also id.* at 8-9 (Final Instruction No. 3).

Sertuche contends that the United States did not satisfy element four of Counts 1 and 2, and, by extension, the first element of Count 3 (possession of a firearm in furtherance of a drug-trafficking offense), which requires proof that he committed either Count 1 or 2. Docket 315 at 1-3. Sertuche also argues that the United States failed to meet its burden as to element two of Count 3.

3

*Id.* at 3. Sertuche maintains that, as to Count 1, the only evidence corroborating the lay witnesses' testimony on element four consisted of 19 pounds of methamphetamine recovered from a traffic stop at which he was not present, as well as methamphetamine from controlled buys in which he was not physically present. *Id.* at 1. He further asserts that the lay witnesses were not credible and were motivated to testify falsely in order to obtain reduced sentences in their own cases. *Id.* at 2.

As to Count 2, Sertuche contends that the only corroborating evidence on element four was the fentanyl recovered during a traffic stop in Jackson County, South Dakota, at which he was present, and another traffic stop at which he was not physically present. *Id.* at 2. He also argues that five adults had access to the vehicle from which he was arrested and that any one of them could have placed the fentanyl there. *Id.* Finally, he challenges the credibility of the lay witnesses on the same grounds, asserting that their testimony was motivated by a desire for leniency in their own cases. *Id.* at 2-3.

Sertuche also argues that the United States failed to meet element two of Count 3—that Sertuche knowingly possessed one or more firearms in furtherance of a drug conspiracy. *Id.* at 3. Sertuche contends that no rational jury could find him guilty beyond a reasonable doubt because "[t]he only evidence the jury received regarding [his] alleged control over firearms during his incarceration in the Winner Jail were the recordings of his phone calls and the testimony of law enforcement regarding their assumptions of what [he] was talking about." *Id.*

4

In response, the United States asserts that Sertuche's arguments fail to include the substantial evidence corroborating the lay witnesses' testimony. Docket 330 at 6. As to Counts 1 and 2, the United States asserts that testimony revealed that Sertuche was a major source of both methamphetamine and fentanyl, as each lay witness described in detail. *Id.* at 6-10. The United States points to record evidence corroborating the witnesses' accounts, including traffic stops, controlled purchases, Facebook and text messages, and recorded jail calls. *Id.* at 6. The United States contends that the evidence, taken as a whole, amply supports the jury's verdict. *Id.* at 9-10.

In response to Sertuche's arguments pertaining to Count 3, the United States asserts that Sertuche made several jail calls to co-conspirators, including Jackie Corean, during which on October 2, 2023, he directed Corean to take his "supersoakers" to Denver and noted that some of them were "rare." Docket 330 at 11. The United States explains that the next day, Sertuche again called Corean encouraging him to travel to Denver with the supersoakers because they were worth at least $5,000. *Id.* The United States contends that, on the same day, Sertuche spoke with April Corean, who lived with Jackie, and confirmed that his "toys" remained at the residence; in subsequent calls on October 4 and October 22, 2023, he discussed with Jackie using the "supersoakers" to obtain methamphetamine and instructed him to travel to Denver with the "toys" to obtain "bags of candy." *Id.* at 11-12.

The United States further explains that, at trial, Detective Ryan Gebhard testified that he intercepted these calls shortly after October 22, 2023, and

5

based on his training and experience, understood Sertuche's references to "supersoakers" to mean firearms. *Id.* at 12. Law enforcement then obtained a search warrant for the Corean residence, and Special Agent Whittle testified that during its execution, officers recovered six firearms, including two fully automatic machine guns, and significant drug paraphernalia consistent with drug trafficking. *Id.* The United States asserts that this evidence, together with the officers' testimony, permits a reasonable jury to find that Sertuche possessed and exercised control over the firearms by directing others in their use, and that he intended those firearms to further the drug distribution conspiracy. *Id.*

Viewing the evidence in the light most favorable to the United States, a reasonable jury could find that Sertuche committed the offenses charged in Counts 1, 2, and 3. Sertuche asserts that the United States failed to satisfy the fourth element of Counts 1 and 2 and all elements of Count 3, relying largely on general assertions and the argument that lay witnesses were not credible. The evidence tells a different story.

As to Counts 1 and 2, lay witnesses testified in detail that Sertuche was a major source of methamphetamine and fentanyl. That testimony was corroborated by independent evidence, including controlled purchases, traffic stops, Facebook and text messages, and recorded jail calls. Sertuche's assertion that the jury relied solely on the witnesses' testimony disregards the substantial corroborating evidence. From these facts, a reasonable jury could conclude that element four of both Counts 1 and 2 was satisfied. Because

6

Count 3 requires proof that Sertuche committed either Count 1 or 2, the jury also had a sufficient basis to find element one of Count 3 satisfied.

With respect to Count 3, element two requires that Sertuche knowingly possessed one or more firearms in furtherance of a drug trafficking conspiracy. Docket 298 at 11. Sertuche contends that the only evidence of his control over the firearms consisted of recorded jail calls and law enforcement's interpretation of those calls. Docket 315 at 3. The evidence shows otherwise. The jury heard multiple calls in which Sertuche directed co-conspirators to transport and use items he referred to as "supersoakers" and "toys," discussed their value, and instructed others to use them to obtain methamphetamine. Detective Ryan Gebhard testified, based on his training and experience, that these terms referred to firearms. Law enforcement subsequently executed a search warrant at the Corean residence, where Sertuche confirmed the items remained, recovering six firearms, including two fully automatic machine guns, and significant drug paraphernalia. That evidence corroborated both the recorded calls and the officers' interpretation. From these facts, a reasonable jury could infer that Sertuche exercised control over the firearms by directing their use and intended them to further the drug trafficking conspiracy.

Taken as a whole, the evidence was sufficient to allow a reasonable jury to find Sertuche guilty beyond a reasonable doubt on all counts. Sertuche's motion under Rule 29 is therefore denied.

7

## II.    Motion for New Trial

Federal Rule of Criminal Procedure 33 allows a defendant to move for a new trial "if the interest of justice" requires vacating the judgment. Fed. R. Crim. P. 33(a). A "district court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29." *See United States v. Campos,* 306 F.3d 577, 579 (8th Cir. 2002). But "[w]hen a defendant moves for a new trial arguing the verdict is contrary to the weight of the evidence, the district court should grant the motion only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Nambo-Barajas*, 338 F.3d 956, 961-62 (8th Cir. 2003) (citation omitted). In making this determination, the court may weigh the evidence and evaluate the credibility of the witnesses. *Hassan*, 844 F.3d at 726. The Eighth Circuit has instructed that "[t]rial courts should exercise the Rule 33 authority sparingly and with caution," because "[t]he remedy 'is reserved for exceptional cases in which the evidence preponderates heavily against the verdict.' " *United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (quoting *United States v. Johnson,* 474 F.3d 1044, 1051 (8th Cir. 2007) (internal citation omitted)).

Sertuche contends that a new trial is warranted "because the Government used a toxic amalgamation of unreliable lay testimony combined with assumptions based on law enforcement witnesses to obtain a judgment of conviction against [him]." Docket 313 at 1. Specifically, Sertuche contends that the six lay witnesses were the only ones to provide testimony regarding the

8

drug quantities for Counts 1 and 2 and argues that their testimony was not credible because each hoped the government would move to reduce their sentences. *Id.* at 1-2. Sertuche further maintains that the lay witnesses' unreliable testimony was reinforced by law enforcement officers' interpretations of his communications with others. *Id.* at 2. He argues that, because law enforcement provided no independent evidence corroborating the witnesses' testimony, this combination of uncorroborated statements warrants a new trial. *Id.* at 3.

The United States disagrees. It argues that the lay witnesses' testimony was credible, consistent, and corroborated by Facebook messages, text messages, and jail calls involving Sertuche. Docket 329 at 3. The witnesses described substantial quantities of methamphetamine and fentanyl they obtained from Sertuche and his partner, Eric Morrison, who helped lead the conspiracy. *Id.* In addition, text messages between Sertuche and his source of supply in Colorado showed that he obtained drugs for further distribution in South Dakota. *Id.* at 4. The lay witnesses explained the meaning of Sertuche's code words, and several testified that their only interactions with him involved drug distribution. *Id.* Law enforcement officers confirmed the meaning of these terms based on their training, the context of the communications, and the prices associated with the drugs. *Id.* at 4-5. The jury heard all of this evidence, including the details of the witnesses' cooperation agreements, and made its own credibility determinations. *Id.* at 5. Based on this, the United States requests that the court deny the defendant's motion for a new trial. *Id.* at 6.

Sertuche's motion for a new trial is denied. Rule 33 grants the court discretion to weigh the evidence and consider the credibility of witnesses, but that discretion is to be exercised sparingly. *Hassan,* 844 F.3d at 726; *Knight,* 800 F.3d at 504. A new trial is warranted only if the verdict is contrary to the weight of the evidence or a miscarriage of justice would result. *Nambo-Barajas,* 338 F.3d at 961-62. Here, there was ample evidence presented at trial to support the jury's verdict, and nothing in the evidence suggests that a miscarriage of justice occurred. Sertuche's motion relies on disagreements with witness credibility and speculation about law enforcement interpretations— matters that the jury was responsible for resolving. The court finds no reason to disturb the jury's findings because there is sufficient evidence that Sertuche committed the crimes alleged in the Superseding Indictment beyond a reasonable doubt. Thus, Sertuche's motion for a new trial is denied.

## CONCLUSION

Based on the foregoing, it is

ORDERED that defendant's Rule 29 motion for judgment of acquittal (Docket 314) is denied. It is

FURTHER ORDERED that defendant's Rule 33 motion for new trial (Docket 312) is denied.

Dated April 3, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

10